# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **MICHAEL SCHULMEISTER** | **CASE NO.  6:19-CV-01584** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **ANDREW SAUL** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding that Claimant, Michael Schulmeister, was disabled from only October 1, 2014 through November 1, 2017. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant fully exhausted his administrative remedies before filing this action in federal court. He filed an application for supplemental security income benefits on August 26, 2016 alleging disability beginning on October 22, 2014. (Rec. Doc. 9-1, p. 114). He filed an application for disability insurance benefits on February 22, 2017, alleging disability beginning on October 1, 2014.[1] (Rec. Doc. 9-1, p. 124). His applications were denied. (Rec. Doc. 9-1, p. 46-70). He then requested a hearing,

---

[1] The ALJ determined that Claimant's onset date was October 1, 2014, which Claimant does not dispute.

which was held on August 7, 2018 before Administrative Law Judge Louis J. Volz, III.  (Rec. Doc. 9-1, p. 38-49). The ALJ issued a decision on January 31, 2019, concluding that Claimant was disabled for the period of October 1, 2014 through November 1, 2017, but that his disability ended on November 2, 2017. (Rec. Doc. 9-1, p. 15-28). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 9-1, p. 5-9). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

### Summary of Pertinent Facts

Claimant was born on April 5, 1969. (Rec. Doc. 9-1, p. 118). He was 45 years old on the alleged disability onset date and 49 years old at the time of the ALJ's decision. Claimant has a GED. He worked as a ship fitting welder for more than thirty years prior to his disability. He has never had a driver's license and never driven. (Rec. Doc. 9-1, p. 42; 44-45). Medical records reveal the following pertinent medical history:

- November 3, 2014 – Dr. Bryan Frentz performed left total hip arthroplasty due to osteoarthrosis. Claimant had complained of left hip pain for the prior five months, which had required him to take a leave of absence from work.

2

Treatment including medication and activity modification had failed. (Rec. Doc. 9-1, p. 198-209).

- August 17, 2016 – Claimant was hospitalized at UMC following a bicycle/automobile accident in which he sustained various fractures of the right tibia requiring surgeries including intramedial nail fixation (IMN) and open reduction internal fixation (ORIF), rib fractures, various head and facial fractures and lacerations, and subarachnoid hemorrhage. (Rec. Doc. 9-1, p. 228 *et seq*).

- February 2, 2017 – Claimant followed up at UMC status post tibia IMN and ORIF of pilon fractures. Images showed interval healing of the fractures, and that Claimant missed his follow up appointment and did not go to physical therapy. He was weaned from crutches to a boot and referred to physical therapy for gait. (Rec. Doc. 9-1, p. 494).

- March 7, 2017 – Claimant presented to UMC with complaints of continued pain following tibia procedures. Xrays revealed a healing fracture, with no evidence of hardware malfunction, no gross evidence of healing since previous study, and decreased bone mineral density. He was referred for additional physical therapy, as he had not met his goals. (Rec. Doc. 9-1, p. 512-14).

3

- July 6, 2017 – Claimant's UMC follow up noted continued pain. Images showed interval minimal healing of tibial and fibular fractures and no adverse changes. (Rec. Doc. 9-1, p. 515-17).

- November 2, 2017 – Dr. Edward Smith with UMCNO Orthopedics Clinic advised that in his medical opinion, Claimant could return to light duty work, with the restrictions of no heavy lifting or prolonged walking or standing. (Rec. Doc. 9-1, p. 507). The progress note from the follow up visit on that date indicates that Claimant was still having pain. Images showed that midshaft fractures of the tibia and fibula had progressively healed, firm osseous union appeared almost complete, and there was no evidence of hardware failure or complication. (Rec. Doc. 9-1, p. 518-21).

- March 15, 2018 – Routine follow up at UMC following tibia fractures. He was still having some trouble with the right leg. He reported more fatigue with walking, not necessarily pain. He had been in physical therapy and was not taking any pain medications. The xray showed no substantial change since the prior one in November, persistent deformity, and no evidence of hardware complication. (Rec. Doc. 9-1, p. 522-26).

- November 22, 2017 – August 2, 2018 – Dr. David Patten assessed Claimant's shortness of breath and evidence of emphysema. He diagnosed a benign pulmonary nodule, bronchiectasis, and chronic obstructive pulmonary disease

4

(COPD). Dr. Patten treated the COPD with an inhaler. (Rec. Doc. 9-1, p. 530-49). Claimant indicated at the August 7, 2018 hearing that he was to have the nodule removed. (Rec. Doc. 9-1, p. 49).

- August 8, 2018 – Claimant followed up at Teche Action Clinic for complaints of left hip pain ongoing for 2-3 months. Exam showed normal gait, tender to left buttock, limited range of motion with internal rotation, and normal tone, bulk, and strength. He was referred to Dr. Frentz. (Rec. Doc. 9-1, p. 587-90).

- July through October 1, 2018 – A perioperative risk assessment prior to undergoing resection of lung mass indicated significant peripheral artery disease with occlusive plaque in the mid left superficial femoral artery. He was to undergo additional testing. In October 2018, Dr. Darrell Solet indicated that a nuclear perfusion stress test did not show any evidence of ischemia and the echocardiogram showed normal left ventricular systolic function without any significant valvular abnormalities. Claimant had evidence of peripheral arterial disease, but this was to be addressed at a later date. (Rec. Doc. 9-1, p. 600-28).

- October 4, 2018 – Dr. Donovan Johnson, with Tulane Orthopedics, noted that Claimant had a complicated history of right lower extremity, including an open tibia-fibula fracture requiring fixation and subsequent nonunion of the right midshaft tibia, requiring intramedullary nail fixation. He reported

5

significant debilitating pain and that he was unable to stand a significant amount of time secondary to pain. Dr. Johnson concluded that the fracture sites appeared healed, but there remained soft tissue damage. He had marked tenderness along the tibial shaft and pain at the ankle joint with some tibial talal arthritis, which could have been attributed to the screw through the tibia nail to the fibula. They discussed removing the hardware, though Dr. Johnson opined this would not likely remove all his pain. Claimant was going to think about removing the hardware, conditional on the lobectomy surgery involving his right lung. They were to consider a pain management referral versus a continuing recommendation for limited activities at work if he could do so safely and his job allowed it. (Rec. Doc. 9-1, p. 629).

- January 21, 2019 – Claimant underwent peripheral angiogram revealing occluded left superficial femoral artery (SFA). A successful balloon percutaneous transluminal angioplasty (PTA) of the left SFA with dissection was performed with minimal residual stenosis. (Rec. Doc. 9-1, p. 34-35).

Claimant testified at the August 7, 2018 hearing that he underwent hip replacement surgery in November 2014. He testified that in 2016, he began having numbness in his left foot, which he relates to the hip. (Rec. Doc. 9-1, p. 41-42). He testified that after Dr. Smith opined in November 2017 that he could return to light duty, he attempted to do yardwork but was unable. He had to rest due to his

emphysema and COPD. He further testified that he lives with his sister, who takes care of the daily chores. He is unable to stand at home, and he estimated he can lift about 15 pounds with his dominant hand. (Rec. Doc. 9-1, p. 43-44). Other than Dr. Smith's November 2, 2017 opinion regarding light duty, Claimant had not received any other information pertaining to work limitations. (Rec. Doc. 9-1, p. 46).

The ALJ also considered Claimant's sister's written statement regarding Claimant's actual activities. Pamela Schahn stated in her written statement that Claimant tried to do things, such as cut grass, sweep, ride bike, cook, and wash dishes, but he cannot stand for too long or walk too far, and his COPD makes it harder for him to breath. She stated that he complains about his legs hurting every day and must have help with daily things. (Rec. Doc. 9-1, p. 195).

The ALJ determined that Claimant was disabled for the period of October 1, 2014 through November 1, 2017, at which point the ALJ determined Claimant to be medically improved and no longer disabled. Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895

F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and

disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

## B.    Entitlement to Benefits

The Disability Insurance Benefit (DIB) program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a).  See, also, *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2).  See, also, *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

C.    **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v.*

*Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D.    **The ALJ's Findings and Conclusions**

In this case, the ALJ determined at step one that the claimant has not engaged in substantial gainful activity since October 1, 2014. (Rec. Doc. 9-1, p. 19). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: left hip osteoarthritis, status post left total hip arthroplasty, right tibia and pilon fractures, status post multiple surgeries. (Rec. Doc. 9-1, p. 19). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 9-1, p. 19-20).  Claimant does not challenge this finding.

The ALJ found that from October 1, 2014 through November 1, 2017, Claimant had the residual functional capacity to perform sedentary work with certain

exceptions: prolonged walking or standing could not exceed 15 minutes on a sustained basis or more than 2 hours out of an 8 hour workday; sitting was limited to up to 6 hours; and Claimant had an inability to lift or carry secondary to decreased range of motion in the ankle, fracture, use of cam boot, and other orthotics. (Rec. Doc. 9-1, p. 16). Claimant challenges the ALJ's finding regarding his RFC *after* November 1, 2017, further discussed below.

At step four, the ALJ found that the claimant is unable to perform his past relevant work as a welder. (Rec. Doc. 9-1, p. 22). Claimant does not challenge this finding.

At step five, the ALJ found that from October 1, 2014 through November 1, 2017, there were no jobs in the national economy that Claimant could perform. (Rec. Doc. 9-1, p. 22-23). However, the ALJ found that Claimant had medical improvement beginning on November 2, 2017 in that he had an increased residual functional capacity to perform light duty work, with certain restrictions. (Rec. Doc. 9-1, p. 23-24). Claimant challenges this finding.

**E.    The Allegations of Error**

Claimant contends that the ALJ erred by (1) failing to carry its burden to show medical improvement (Error 1); (2) failing to properly assess Claimant's residual functional capacity after November 1, 2017 (Errors 2 and 3); and (3) failing to

adequately explain Claimant's right to be represented (Error 4). Claimant's first three allegations of error are addressed through the medical improvement analysis.

**1.  Whether Claimant has reached medical improvement. (Error 1).**

Medical improvement is any decrease in the medical severity of a claimant's impairment, which was present at the time of the most recent favorable medical decision that the claimant was or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). The determination of a decrease in medical severity must be based on changes (i.e. improvement) in the symptoms, signs, and/or laboratory findings associated with the impairments. 20 C.F.R. § 404.1594(b)(1). Medical improvement is related to the ability to do work if the improvement increases the claimant's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(1), § 404.1594(b)(3). Substantial gainful activity is defined as "work activity involving significant physical or mental abilities for pay or profit." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The ability to engage in substantial gainful activity is determined through an "objective assessment of [the] functional capacity to do basic work activities" and a consideration of vocational factors. 20 C.F.R. § 404.1594(b)(5). The second part of this analysis—Claimant's ability to engage in substantial gainful activity—is addressed in the subsequent section.

The ALJ found that Claimant did not develop any new impairments since November 2, 2017, such that his current severe impairments remained the same.

(Rec. Doc. 9-1, p. 23-24). The ALJ relied on November 2, 2017 xrays of the right lower leg showing progressive healing of the midshaft tibial and fibular fractures which were almost completely healed and without evidence of hardware failure or complication. (Rec. Doc. 9-1, p. 24). The medical records discussed above support the ALJ's finding.

Claimant contends the ALJ failed to consider November 2, 2017 and later medical records, such as the November 2, 2017 xray which showed decreased bone mineral density (also known as osteopenia) and August 2018 records which showed he was complaining of left hip pain. However, the record contains no medical evidence suggesting that the existence of osteopenia somehow negates a finding of medical improvement. Further, although pain can constitute a disabling impairment, pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985); *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19. Mild or moderate pain is not disabling. Subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.

*Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence. *Id*.

The medical records show that as of March 2018, Claimant reported fatigue with walking, but not necessarily pain. He was not taking any pain medications. The xray at that time showed no evidence of hardware complication. (Rec. Doc. 9-1, p. 522-26). At an October 2018 follow up, despite Claimant's reports of debilitating pain, Dr. Johnson appeared to support a continuing recommendation for limited activities at work if he could do so safely and his job allowed it. (Rec. Doc. 9-1, p. 629). Thus, the Court agrees with the ALJ that Claimant experienced a decrease in medical severity after November 1, 2017, when his treating orthopedist, Dr. Smith recommended that Claimant be allowed to return to light duty with restrictions.

## 2. Whether Claimant's functional capacity increased after November 1, 2017. (Errors 2 and 3).

The second part of the evaluation process relates to the claimant's ability to engage in substantial gainful activity. In making this determination, the Commissioner utilizes a seven-step sequential analysis for the termination of a Title XVI SSI claim, and an eight-step sequential analysis for termination of a Title II DIB claim. 20 C.F.R. § 416.994(f) and 20 C.F.R. § 404.1594(f). The analysis is basically the same except that with regard to the SSI claim under Title XVI, the performance of substantial gainful activity is not considered.

The first question to be considered is whether the claimant engaged in substantial gainful activity ("SGA").  If so, the claimant's disability has ended. The evidence supports the ALJ's finding that Claimant has not engaged in substantial gainful activity.

The second question is whether the claimant has an impairment or combination of impairments that meets or equals the severity of a listed impairment. If so, the disability is continuing.  The ALJ found that Claimant's impairments did not meet or medically equal a listing since November 2, 2017. (Rec. Doc. 9-1, p. 23). Claimant does not challenge this finding.

The third question is whether there has been medical improvement.  As explained above, this Court finds that medical improvement has occurred.

The fourth question is whether medical improvement, if found, is related to the claimant's ability to work. The ALJ found that Claimant's medical improvement is related to the ability to work because his RFC has increased. (Rec. Doc. 9-1, p. 24). In making this determination, the ALJ relied on the medical records summarized above showing that Claimant underwent a total hip replacement in 2014, followed by the bicycle accident resulting in a severely fractured tibia and fibula. The ALJ further properly relied on medical records showing that the fractures had healed without evidence of hardware complications and that as of March 2018, Claimant was not taking any pain medication. The ALJ gave partial weight to the State agency

consultant, Dr. Louis Hargus, who opined that Claimant could perform light duty work; although, the ALJ gave less weight to Dr. Hargus's opinion that Claimant had postural limitations, as these were inconsistent with the record. The ALJ gave significant weight to Dr. Edward Smith's November 2, 2017 opinion that Claimant could return to light duty work, with restrictions on lifting and prolonged walking or standing. Dr. Smith was Plaintiff's own treating physician.

The next two questions are used when there is a finding by the Commissioner of no medical improvement, or a finding of medical improvement not related to the claimant's ability to work. Accordingly, they are inapplicable in this case.

The seventh question is whether the claimant is able to engage in past relevant work. If so, the disability has ended. In this case, the ALJ found that Claimant was unable to perform past relevant work as a welder, which is classified as medium, skilled. (Rec. Doc. 9-1, p. 26-27). Claimant does not challenge this finding.

The final question is whether the claimant is able to perform other substantial gainful activity. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence

in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

The ALJ found that beginning on November 2, 2017, Claimant had the RFC to perform light duty work with limitations. In making this determination, the ALJ applied significant weight to the November 2, 2017 opinion of Claimant's treating physician, Dr. Edward Lee Smith, who opined that Claimant may return to light duty, except that he cannot perform heavy lifting or prolonged walking or standing. The Court agrees with the ALJ that this opinion is supported by the record, which shows that as of March 2, 2018, Claimant was in no acute distress, had normal breathing, heart rate, clear breath sounds bilaterally, normal gait, tone, bulk, and

strength. Subsequent examinations in April and August 2018 similarly showed no acute distress, normal tone, bulk, strength, and gait, as well as clear lungs with normal breath sounds bilaterally. (Rec. Doc. 9-1, p. 522-26; 587-90). It is also significant that another treating physician, Dr. Donavan Johnson, did not foreclose the recommendation for limited work activities if he could do so safely and his job allowed it. (Rec. Doc. 9-1, p. 629).

In order to determine whether qualifying jobs existed, the ALJ considered the expert opinion of a vocational expert. The vocational expert identified multiple jobs that were available to an individual restricted to light duty with prohibitions against heavy lifting and prolonged walking or standing, such as those imposed on Claimant. These available jobs included Marker (25,900 available), Machine Operator or Tender (79,000 available), and information clerk (44,000 available). (Rec. Doc. 9-1, p. 47-48). Therefore, the ALJ found that Claimant was capable of making a successful adjustment to work that exists in significant numbers in the national economy, such that he was found "not disabled" after November 1, 2017. The Court finds that this conclusion is supported by the record.

Claimant contends that the ALJ improperly determined his RFC because the ALJ failed to consider Claimant's other conditions: COPD, tibial tala arthritis in right ankle join, and chronic peripheral arterial disease. The Court disagrees. The ALJ specifically found that the record contained evidence of non-severe

19

impairments, including COPD, hypertension, and a lung nodule which did not significantly limit Claimant's ability to perform basic work activities. (Rec. Doc. 9-1, p. 19). The record supports that Claimant's COPD and peripheral arterial disease are non-severe impairments. Claimant's COPD was treated with an inhaler, and there is no medical evidence in the record, other than his own testimony, that his COPD prevented him from performing basic work activities. (See Rec. Doc. 9-1, p. 49). Similarly, although a perioperative risk assessment indicated significant peripheral artery disease, a record presented by Claimant at the hearing indicates that Claimant underwent a successful balloon procedure in January 2019 with minimal residual stenosis. (Rec. Doc. 9-1, p. 34). Otherwise, there is no evidence in the record to support Claimant's contention that his peripheral artery disease is a severe impairment or prevents him from performing basic work activities. With regard to Claimant's ankle osteoarthritis, the record supports that the ALJ considered this impairment in determining Claimant's RFC. The ALJ's conclusion is supported by records discussed above. See also the above discussion regarding Claimant's subjective pain complaints and his treating physician's continued recommendation for light duty with restrictions.

### 3. Whether the ALJ adequately explained Claimant's right to represented. (Error 4).

Claimant contends he did not receive adequate notice that he was entitled to representation at the ALJ hearing. "A claimant is entitled to adequate notice of her

right to counsel at a hearing before an ALJ." *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). Adequate notice consists of notification of the type of assistance an attorney could provide during the hearing, that there is a possibility the claimant could qualify for free representation, that he could also acquire counsel who would only receive compensation if he prevailed, and that the Social Security office would withhold a maximum of twenty-five percent of past due benefits to pay toward a retained attorney's fee. *Id*., at fn. 4. In order to prevail Claimant must further show that he was prejudiced by the absence of counsel at the hearing, by pointing to "evidence that would have been adduced and that could have changed the result had" an attorney been present. *Id*. When the claimant is not represented by counsel, the ALJ is "under a heightened duty to scrupulously and conscientiously explore all relevant facts." *Id*. at 552-53. The ALJ satisfies this duty by questioning the claimant in depth regarding the pertinent issues and allowing the claimant an opportunity to speak at the hearing. See *id*.

The record reflects that Claimant received adequate notice of his right to be represented by counsel. February 20, 2017 correspondence from SSA advised Claimant of his right and the process for appealing, including the right to have "a friend, lawyer, or someone else help you." The correspondence further advises of the availability of free legal services for those who qualify, the availability of lawyers who do not charge unless the appeal is won, and that up to 25% of past due

Social Security benefits could be withheld to pay a hired lawyer's fee. (Rec. Doc. 9-1, p. 77). Claimant was again advised in written notice of his right to be represented on March 8, 2017 (Rec. Doc. 9-1, p. 80; 84), on March 17, 2018 (Rec. Doc. 9-1, p. 86), and on May 2, 2018 (Rec. Doc. 9-1, p. 101). At the August 7, 2018 hearing, Claimant executed a Waiver of Right to Representation form wherein he acknowledged that he had been informed of and understood the right to representation by either an attorney or non-attorney. (Rec. Doc. 9-1, p. 38; 114). The Court finds that the record contains ample evidence that Claimant was adequately notified of his right to representation. The hearing transcript also confirms that the ALJ satisfied his heightened duty owed to an unrepresented claimant by questioning him regarding his information, medical records, work history, daily activities, etc. (Rec. Doc. 9-1, p. 38-46). In addition, the ALJ provided Claimant the opportunity to speak and provide and further information he wished to be known at the hearing. (Rec. Doc. 9-1, p. 48-49). Accordingly, Claimant's allegation of error in this regard is meritless.

## <u>Conclusion and Recommendation</u>

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed in Lafayette, Louisiana, this 13th day of January, 2021.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE